May it please the court, Angela Oliver, on behalf of the appellants. The court should reverse the board's decision because the board improperly rejected a design for a lip implant as anticipated by a great... You didn't like bring any of them with you, did you? No, I'm sorry, you're wrong. How big is the lip implant? Is it like this big? That's about right, yes. Okay, now this is just me being like curious, nosy. What is it for? Is it for like those actresses that want the really big puffed up lips or is this some sort of like replacement for people who've had injuries? Like what is this thing for? I think it can be used in both of those types of ways. So if I wanted like a pouty look, this is what I would use? I think that could be an option. Oh, okay. But it's got to be really small. Like how big is it? It is about that big. About no bigger than the size of your lip, of course. So maybe an inch-ish. Okay. At most. Whereas the gray paper stump is, as seen in the record, about five inches long. And that's an art pencil? It's not a pencil, Your Honor. It's for rubbing charcoal. So kind of making different shading options with charcoal or pastels or kind of chalky materials like that. So the gray paper stump is made of paper, which allows it to do that and kind of spread that material around. And so, Your Honor, we believe that the board erred by rejecting the design for this medical grade lip implant as anticipated by this gray paper stump art tool. Respectfully, we believe the court erred as a matter of law by expanding the scope of the design patent claim to cover any article of manufacture instead of limiting it to the article of manufacture identified in the claim language. And so we would ask this court to correct the board's misunderstanding and resolve this fundamental question of design patent law. The Supreme Court's decision in Gorham confirms that design patents are tied to articles of manufacture. Gorham set forth the standard that is now the sole test for infringement and anticipation of a design patent claim, the ordinary observer test. And that test explains that infringement or anticipation occurs if, in the eye of an ordinary observer, two designs are substantially the same so that the resemblance is such as to deceive an observer, inducing him to purchase one, supposing it to be the other. So when you say ordinary observer, it's not an ordinary observer as in any human fluffed off of the street. It's sort of an ordinary purchaser because inherent in the test as articulated, it seems to be it would motivate that ordinary observer to purchase one rather than the other by mistake, right? So it's sort of, it's not just the reasonable person standard. It's the reasonable purchaser. Is that sort of more in line with what you think? That's correct, Your Honor. That's what this court explained in Ethicon Endosurgery. The court explained that the ordinary observer is not an expert in the claim design but one of ordinary acuteness who is the principal purchaser of the underlying articles with the claim design. Okay, so now I'm curious. Who is the purchaser of the lip implant? Is it the actress that wants the big puffy lips or is it the surgeon who's going to be inserting it in her lips? Well, Your Honor, in other cases with respect to implants, the court has suggested that the purchaser is not necessarily the individual who receives the item but the person who's choosing it as the proper medical tool to use for that patient. So more along the lines of the surgeon or someone like that. And so are these devices sold in similar places? I mean, when the surgeon is looking to purchase a lip implant, is he going to Walmart and seeing it on the shelf next to the art stump? No, Your Honor. That would not be a typical situation. These are sold through, you know, typical medical device type of sales. They're not available where? At Dick Blake Art Store, for example, which is where this gray paper stump was sold. So very different context. And I think that shows that this case is a prime example of when the ordinary observer test is simply not met. No ordinary observer would be deceived into purchasing a lip implant thinking that it were actually a gray paper stump. So Gorham sets out two different inquiries that you're supposed to undertake. Do you see those as different? Or is really the second inquiry just an expansion on the first? I'm not quite clear. Yes, Your Honor. So I believe the two kind of two-part inquiries the court sets out in Gorham, the substantially similar, such that one would be deceived, I believe those are talking about the same thing. We are not arguing that there's any need to show actual deception or something like that. The idea is that someone who is a purchaser of these would view these as so similar that they would actually be deceived into purchasing one versus the other. Could something satisfy the first test and not satisfy the second test? I don't believe so because there's no indication that the Supreme Court viewed them as different tests. I do believe it's all part of one inquiry. And every time the test has been restated, it is typically stated with both parts there. And I'm not aware of any cases where the court has conducted a separate analysis for those two aspects. So I believe the inquiry is really one and the same. And it goes to the proper scope of a design patent claim, which is what this case is really about. Now, Kerver took the reasoning in Gorham, that test, as well as other aspects from Gorham to provide clarity with respect to how we define the scope of a design patent claim. So, for example, the court in Kerver looked to the language in Gorham, which explained that design patent law focuses on the appearance of an article of manufacture, not an abstract impression or picture. So, again, the court was very focused on tying the design to a particular article of manufacture. Would it be your position, I mean, do you go so far as to say only another lip implant could possibly be confused? In other words, does the article of manufacture always have to be identical? I think there is a bit of wiggle room there with respect to claim construction. So, for example, if the identified article of manufacture is a utensil with a certain shape or design, I believe there may be room to say, well, that would include a fork or a spoon or a spatula. So some room there. But what we would know is it certainly would not include a couch or something else. And there may be some line drawing there to be done. But I think there is a bit of scope that could be included other than the precise article of manufacture. In other words, an article or very similar articles, I think, would fall within the scope. But certainly not the degree of difference that we have here, where we have categorically different types of articles. And to the extent line drawing is an issue, for example, Professor Bersine explained in her article that if line drawing is an issue, in that sense, there are different classification systems that could potentially be used. Of course, this court is familiar with the harmonized tariff system. But she suggested also the Locarno classification system for industrial designs. So there are resources out there, evidentiary questions that may arise in the context of precise plain construction issues. What's your response to the government's reliance in the red brief on Samsung versus Apple and the fact that they said that the court didn't refer to deception or confusion in that case? Your Honor, I don't think that provides any guidance to this case. Samsung versus Apple was simply addressing a completely different issue with respect to damages. I don't think there's anything to be gleaned with respect to the scope of what a design patent claim covers based on how the court phrased the test in that case. Of course, the court did not apply the ordinary observer test there. It was simply discussing what, you know, with respect to different components within an article, how we look at damages in that sense. So you think the Supreme Court was just being a little bit sloppy on a point that didn't really matter? Well, there was no indication that the Supreme Court was intending to overturn its prior precedent, which of course has included both aspects of the test. So it seems to be a non-issue in that case. I don't think there's any guidance to suggest that they were trying to overturn or limit the scope of that test. Your Honor, returning to the court's decision in Curver, that holding is sufficient to resolve the case. In that case, the court explained that design patent statutes are centered on articles of Section 171, that whoever invents any new original and ornamental design for an article of manufacture may obtain a patent therefore. So in Curver, the claim language was whether an ornamental design for a pattern for a chair. And the court held that the scope of the design claim to the chair would not include the design as applied to a decorative basket. And that is as far as the court needs to go to resolve this case. The scope of a claim to a lip implant simply does not include— Does it matter that in Curver there really wasn't an article of manufacture that could be identified? Your Honor, I do not believe that makes a difference because we have the same situation here. Without looking at the language of the claim that identifies a lip implant, if you were to just look at the figure itself, there would really be no way to tell what that article is. And that's the case with a lot of shape claims as well. For example, the novelty wingnut hat. For example, if you were just looking at a picture of a wingnut, you would not know whether it is an actual wingnut used in a mechanical sense or if it were this novelty hat. So I think that's not a basis to distinguish Curver from this case or from shape designs generally. Your Honor, just to practically address a few of the problems with the government's design per se approach that would essentially have design patent claims cover any article of manufacture. That approach fails to give the public notice about the scope of design patent claims and would result in barrage infringement complaints and impossible prior art searches. As to the public notice function, focusing claim scope on the article of manufacture puts the public on full notice of what the patent covers and what it does not. And that's exactly some of the reasoning that the Court in Curver pointed to. The public should be able to understand, based on the article of manufacture, what the patent covers. In fact, as the Court noted in Curver, if the Court were to adopt the design per se approach, the title and claim language of a patent would essentially provide no useful information. And I would take it a step further and say the title and claim language would actually be misleading to the public because here, in this instance, the lip implant scope of the claim would be much broader than what is identified there. We've also seen examples, as we've pointed to in our brief, of broad infringement claims based on different types of articles of manufacture. And so this is something we're already seeing based on broadening the scope of these design patent claims beyond the articles identified in the claim. As to prior art searches, this breadth of claim that the government has proposed simply makes prior art searching unrealistic. If a claim scope covers any article of manufacture, then all categories of designs would have to be considered to be searched for anticipation purposes. And certainly that's a problem practically for the PTO, but it's not just a problem for them. So I want to return to Judge O'Malley's earlier question, which for me is the most significant decision point in this case, which is should we hold that an ornamental design is limited to the claimed intended use? In your case, it says the ornamental design for a lip implant, as shown and described below. Or is there really room to go beyond that? For example, and I agree with you, it's not close in this case if that is a limitation, lip implant versus art pencil or art stump or whatever it is. But what if it was not a lip implant but an eyebrow implant? Maybe somebody wanted more substance to their eyebrows and it had a similar shape. I think it's important because whatever we say about this doesn't just affect your ability to secure the design patent, but it significantly will impact your ability to assert infringement of the design patent. So I think this is an important legal question, which is what is this claim limited to? Is it limited to the design for the particular article specified in the claim or not? I believe that is the central aspect of what it is limited to. And to the extent there is concern with that being too narrow, then I do think there is a bit of room with respect to claim construction. When you say to the extent that that is viewed as too narrow, I don't know by too narrow by whom. The law is the law, right? So what should the law be? Should the law be that when it comes to a design claim, it is the design as applied to the particular article of manufacture specified, such that your client would never be able to assert this patent against anything but a lip implant? Or is it the case that there ought to be in the law some expansion of that concept? And if so, on what ground? On what theory? Doesn't that just introduce a lot of confusion into both prosecution and enforcement down the road? What is the rule of law you want about how this portion of the claim limits the claim? Your Honor, I believe the best statement of what the law should be would be that the design patent claim is limited to the article of manufacture identified or very similar articles. And that's very similar to the language that this Court has used in the 103 context for design patent claims with respect to the scope of similar type of art that can be considered for 103. So we already have some case law with respect to what that analysis might look like. This will not be a completely unguided analysis under the case law. So you're saying we adopt an analogous art concept? Not necessarily, Your Honor. Because I think this is just an example of where some reasoning may come from with analyzing the scope of this. But essentially, I do think that the identified article should be the center of the analysis and not much beyond that. So very similar. So does it turn on exactly what is said in the claim or exactly what the title of the patent is? In other words, perhaps you could have made this design claim for a surgical implant as opposed to a lip implant. Does that change the analysis? I think that would change the analysis. And certainly there is a degree of breadth that a patentee would be entitled to, to change the way they've claimed it like that. Or even a facial implant or something like that. At some level, there would be too broad of a claim. So for example, in Curver, the original patent claim there was a claim for a part of furniture. And the patent office actually said, in that case, that's too broad. You need to narrow it. And the examiner suggested, okay, a pattern for a chair. Why don't you try that? So the patentee went with it there. Here's what concerns me. I love this black letter idea of saying it's limited to lip implants and only a patentee can design for that. But part of my mind, I'm thinking about the ordinary purchaser. I'm kind of in trademark land a little bit in my head almost because it seems similar to the likelihood of confusion test in a way. But I'm thinking of the ordinary purchaser, the discussion in Gorham and elsewhere about the need to ensure that there isn't confusion in the purchasing. And this is very sophisticated. It's a surgical implant, a lip implant. A doctor is not going to accidentally buy an art pencil. I mean, it's not going to happen, right? That's just, it's absurd. But if we limit it to a lip implant and you're talking about a less sophisticated design, like suppose this is a design for a plate on China, right? And now suddenly that design is going, that same exact very unique design is going to be applied to all kinds of things that aren't plates but are maybe kitchen items of similar nature. This is where I'm starting to get worried. The ordinary purchaser could think it's the same design. I'm just still trying to wrap my head around this is a very easy case. There's a lot of distance between lip implant and art pencil. But I'm worried about the less sophisticated articles of manufacture and the greater potential for confusion or overlap. Sure. So I believe the example you presented, Your Honor, is helpful in the sense that it goes to other areas of IP law as well. So in the instance of a design that's applied to a plate and then other kitchenware, et cetera, and beyond, I do think the design patent should still be fairly narrowly limited to the identified article and really not much beyond that. But that does not mean that a patentee or that a designer is unprotected with respect to other items. So we have trade dress. We have trademark. We have copyright. We have other options that can cover some of that and that do address the concern of confusion regarding likelihood of confusion as to the source of the product. So there are many areas of IP law that can address some of that broader scope. It's just the design patent law doesn't have to do it through a single patent. Okay. That's very helpful. Thank you, Ms. Oliver. I'll restore some of your rebuttal time. Let's hear from Ms. Kelly. Good morning, Your Honors. May it please the Court. The agency is not asking for patents on per se designs. Not at all. Rather, in keeping with this Court's precedent, when the agency examines a design patent application, the agency looks to the overall appearance of the design shown in the application and compares that with prior art designs. It just so happens to be the case that when the design shown in the application is for the shape or configuration of an article of design, the agency is looking more to the overall visual impression to look at. Sorry. Are you saying, though, that the claims really don't matter? I just want to make sure that I'm understanding your question. Is your question, does the language in the claims? Yes. I believe that it does matter. It certainly does matter under this Court's precedent because you have to look into the overall visual appearance. And in the case of surface ornamentation, the overall visual appearance or impression, as the Court found in Kerber, involves looking at the design in the context of the article to which it is applied. But that isn't the case when you're talking about the shape or configuration of a product. The overall visual impression of the design is essentially one and the same, contiguous with the article of manufacture. So you're saying that the written language that limits it to a lip implant can be ignored when we're talking about a design for a shape? I wouldn't characterize it as ignored. I would just say that it's a meaningless distinction. It's not an addition or consideration that carries any sort of weight in that circumstance as a practical or factual matter. Even in Kerber, you're looking at the overall visual impression and what the Court said in Kerber is, when you apply this pattern to a chair, the overall visual impression it gives is not substantially the same as this pattern is applied to a basket. And that's because in that situation, the overall visual impression includes the article of manufacture. Here, when you're talking about a shape, we're talking about something that's one and the same with the article of manufacture. Well now, counsel, let's be clear about this. Either you do or you don't ignore the designated article that's in the claim. You ignore that, the design for a lip implant, or you do? I would like to break that down into whether we're talking about infringement or whether we're talking about examination. We're talking about patenting. Okay, in examination... You say you do or you don't ignore the limitation in the claim to the article of manufacture. Do you do it or don't? It's difficult to answer with a simple yes or no. I think it would be helpful for me, in answering your question, to describe what happened here. Because I think that will help inform it. If it doesn't, I'm sure you'll let me know. What happens here, and in cases like this, we work very closely with patents to say, what do you do in these sorts of situations? And we talk to people in the court. And what they said is, you look to the article of manufacture during the examination process as sort of your beginning point for the kinds of designs that you're looking at. But when the design shown in the application is for a very simple shape or configuration of an article of manufacture, then you start looking at other articles of manufacture that have that similar simple shape. What if the other article you're looking at... Okay, so you're going from here to a pencil. What if the other article was six feet long but had a similar shape? You would say that would also be disqualifying? It probably would, because size is a factual inquiry, and that sort of disparity in size is so great, you wouldn't imagine that they would have substantially the same overall appearance. But if you're talking about... But you obviously aren't saying that the size doesn't matter here because the art pencil is a lot longer than the lip implant. Whether it's a lot longer is a factual inquiry, and the board found that it isn't. I was curious, like Judge Moore, about the sizes of these things when I first looked at the case. So I looked at the Blick catalog, and I looked online, and yes, paper stumps can typically range between 3 1⁄2 inches to 7 inches. And that's because of their intended uses and function to be held by the human hand and worked on a piece of paper. Again, those non-ornamental functions are not part of the design. So some doctor's going to accidentally buy something 7 inches long for your lips? No. That's a different question. And the answer to that question is the agency does not look at the ordinary observer as, in this case, a plastic surgeon or, in general, this ordinary purchaser. We look at an ordinary observer. Because the test set forth in Gorham and then again by the en banc court in Egyptian Goddess is the ordinary observer familiar with the prior art. That is not a designer of goods. Gorham didn't say, well, we want it to be the standard, a more precise standard. And it'll be the designer of, in that case, silverware. We believe that they used ordinary observer instead of a designer of flatware because they wanted it to be somebody looking at this. And that is the standard that we follow. And so, well, yes, a plastic surgeon, we don't deny that a plastic surgeon looking at an actual lip implant and looking at a paper stump would mistake one for the other and be deceived into putting a paper stump in a human being. But what we're saying is that's not the test. First, there are several problems with it. First, you don't compare the actual product with the prior art or, in the case of infringement, with the accused's design. You look at the drawing and the specification. That's the claimed design, not the actual product of a lip implant. The actual product implies a lot of things. It implies that it looks like plastic. It doesn't look like a paper product. There are lots of things involved in looking at the product that are not shown or claimed in the application, in the drawing. So that's one problem. So you don't think the ordinary observer test is limited at all by the ordinary observer who would be considering purchasing the product or using the product. I think that, as set forth in Gorham and Egyptian Goddess, it could be that sort of person, but it just has to be that sort of person familiar with the prior art. And in this case, in the examination process... It either is or it isn't. Is the ordinary observer test from the vantage point of a purchaser or not? It's a yes or no question. So then how do you deal with Gorham, which says, we hold, therefore, that if in the eye of an ordinary observer giving such attention as a purchaser usually gives, two designs are substantially the same if the resemblance is such as to deceive such an observer inducing him to purchase one supposing it to be the other? I'd like to break that down into two parts. The first part is giving such attention as an ordinary purchaser is not the same as an ordinary purchaser. They're just saying an ordinary observer looking more than just at a passing glance. The resemblance has to be such as to deceive that ordinary observer into purchasing one supposing it to be the other. How could a surgeon accidentally buy an art pencil to put in somebody's lip? As you said, they're 3 1⁄2 to 7 inches long and the board found that the lip implants were only a couple of millimeters long. No, that is not what the board found. The board found that there were only a couple of millimeters.  having a size on the order of millimeters. Page 5 of the board's decision. I Page 5, the board seems to have found that the lip implants are on the order of millimeters. Well, millimeters I don't I think that was inartful wording and that's discussing the differences between these two things but I would like to go back to this notion set that aside for a minute and get back to the heart of what that second part of your question was which was going to be the second part of my answer which is when you look at that language about to deceive an ordinary purchaser you have to read Gorham in the context of its time and you know that language is repeated again in Egyptian Goddess and other cases moving forward Gorham was written 5 years before we even had a trademark act in the United States it was written 50 years more than we had the first trade dress case. Yes, we endorsed we actually quoted that exact language in International Seaway Trading vs. Walgreens which is from 2009 the court quoted that exact language affirmatively in our case law so whether Gorham is from the 1800's or not is sort of irrelevant obviously nothing are you suggesting the law has changed between 2009 when we affirmatively cited that as the principle from Gorham that applies or I don't understand I'm saying that that language meant something different at the time and although this court has repeated it it is a practical matter this court has repeated it many times but as a practical matter deception does not play a role in the examination process for design patents it does not play a role in validity for design patents it just simply as a practical matter has never carried any sort of weight and if this court were to find that deception were required that would be a very large shift in the landscape I don't actually agree with you at all because it's not about deception what this test does is really articulate exactly I think the point your opponent made which is claim language means something and when the claim expressly has only about five words in it one of which is the design below for a lip implant the only way the office can win is if I disregard the only five words in the claim and look only at the picture if I divorce those two I think what Gorham and all of our law was doing when they speak about deception was giving meaning to those words we may not have explained it that way but we were giving meaning to claim language I think the only way the office can win this case is if you somehow convince this panel of judges to conclude that the words of the claim have absolutely no relevance to its interpretation your honor, as I said at the outset that is absolutely not what the agency is trying to do what the agency is saying is that in cases like this, in this particular case and in situations where we're talking about examination and which the claim scope is is couched in terms of less precision or in greater breadth than it is in validity context or infringement context we're not arguing that these two things, one would not infringe the other, we're not arguing that we're saying that when we're talking about patent examination of shapes and configurations of products the role of the article of manufacture is lower so is it your view then that a different standard applies to the words of the claim in an infringement suit if you're analyzing infringement versus an analysis in prosecution as to whether it will allow the design what I'm saying is that during examination, claims are given their broadest reasonable interpretation and we do that to does the agency have some interpretation of lip implant that is broader and therefore a basis for including art pencils the agency uses the article of manufacture to define the world of prior art that is how we use it we're not just talking about the shape of a product we're talking about the shape for a product so it has to be for some particular product, right? yes just as a threshold matter to define a design patentable subject matter just as in the utility patent world section 101 is a threshold matter sets forth four types of subject matter that may be the subject of utility design and once you're over that threshold whether it be a composition matter, a process, etc once you're over that threshold then you examine for anticipation and obviousness and the other statutory requirements and you use the description of the subject matter as your guide through that examination process about claim scope and it's the same in a design patent application we don't issue patents on designs per se, they must be as a threshold matter under section 171 tied to an article of manufacture I don't understand how you can have it both ways you tie it to an article of manufacture but then the article of manufacture doesn't matter the article of manufacture can help guide what the scope of the prior art is so yes, everything all articles of the same type are in that world of prior art so my prior question is could the prior art be 6 or 7 or 10 feet long as long as they have that conical shape and that would mean the answer would have to be yes no, the answer would be no, because we look to this world of prior art with things having things that are analogous articles of manufacture and then there are non-analogous articles of manufacture that look the same where do we stop? we go from millimeters which the board actually did describe it in a matter of millimeters we go from millimeters to inches but where do you stop then? I believe the board misspoke even as Ms. Oliver said lip implants range between one inch to one and a half inches so they're not millimeters in size I believe the board was really referring to the size of the tips of the claimed and the prior art device setting that aside the way that it works in examination is we look at analogous designs and we look at non-analogous designs with the same shape then looking another step further in deciding whether to make a rejection you look at the overall impression the overall visual appearance of the claimed design and with surface ornamentation you're going to have to consider the design in context of the article of manufacture and so some of those designs that you initially included in your Venn diagram of prior art designs are not in fact going to be the basis for rejection so again to be clear I heard you say all articles are the same type you're saying these articles are of the same type the lip implant and the artist's tool no your honor those would fall into this larger sort of circle in a Venn diagram of non-analogous articles with the same shape how large? that's just for initial examination purposes and then you look at those things so you find all this prior art if you're the examiner and then you look at those things and you say when does size that's a factual inquiry when does size make this have the same overall visual appearance and when does size not make this have the same overall visual appearance so the board found that these were not substantially different in size but the examiner could have easily said well they are substantially different in size so I'm not going to make this rejection and then when that goes before the board the board can say I don't see whether these are substantially different in size you know substantially similar in size or not and then affirm or not affirm the rejection and that's how it works defining the scope of the prior art is done with less sort of precision during examination than it would be in an infringement action or in an invalidity context and that's for several reasons which we outline in our brief because during examination claims are given the broadest reasonable interpretation because we want to ensure as an agency that we are issuing a design patent on one design not a design patent that would cover several designs and I know that there's also some tension between what I'm saying now you're issuing it on the claimed design and the claim is specific to the lip implant so that's really the problem with this entire analysis is that you're eliminating from the scope of prior art everything unrelated in the world of design as prior art that would be quite an activity for your examining corps would it not? We ask the corps that question because there is footnote 3 in Curver which raises that sort of question they said well if we just limit everything to analogous art then we are making life easier at the PTO but when we pose that question to patents and particularly the people in the design patent corps what they said is no it's simple shape we can easily find other articles of manufacture during our normal search process they do this day in and day out that have the same shape for example in this case it would have been easy for an examiner to look at the lip implant design and again we're not considering other things about lip implants like what it's made of or other functional things, we're only looking at the drawing we can find other shapes like many drawing things pencils markers, pens there are all sorts of things that have the same shape so at the PTO we are trying to use the broadest reasonable interpretation to prevent people from obtaining a design patent on more than one design and we are not saying and we do not believe that Sergio Sill could successfully go out there and sue Blick Art but we are saying that infringement is a different inquiry than examination and they have different purposes and I think we're all set we've well adjusted the time I'll restore Ms. Oliver's three minutes of the bubble time Thank you, your honors The government seems to agree to some extent that the article of manufacture identified in the claim language is relevant but at the same time the government states that during examination they look at completely unrelated art to see if a general shape exists in the world and although the PTO argues that that is not a burden on the patent office, that it is something that they are capable of doing, it is not a burden that should be placed on industrial designers who are trying to determine whether their new designs should be patentable or would infringe someone else's product and the BRI standard does not change this analysis, it was not used in this case, there is no indication that the term lip implant was construed and certainly not to include an item such as the gray paper stump here At the end of the day, at no level should a lip implant be rejected as anticipated by a gray paper stump art tool. There is simply no discernible standard that would allow that claim scope, even in examination to allow that to serve as a basis for an anticipation rejection here. So unless the court has additional questions I will cede the remainder of my rebuttal time. Thank you Ms. Oliver, I thank both counsel, the case is taken under submission.